ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**REALLY GOOD STUFF, LLC,**

                Plaintiff,

- against -

**BAP INVESTORS, L.C. and CREATIVE KIDS FAR EAST INC.,**

                Defendants.

19 Civ. 2218 (LLS)

ORDER

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/10/19

The October 17, 2019 order granting plaintiff's motion for a preliminary injunction stated:

> Defendants are entitled to a bond in an amount that will reasonably compensate their damages if this injunction is found to be entered in error. It is impossible at this point to determine the amount of the bond since neither side has presented justification for a particular figure. Defendants are directed to comply with this injunction order by the close of business on Tuesday, October 22, 2019, and thereafter the court will hear the parties to determine the appropriate amount for a bond.

In their submissions, plaintiff argues that no bond at all should be required, and defendants request that plaintiff post a bond in the amount of $3,709,205.01, the aggregate of four categories: (1) BAP's projected lost sales of enjoined products in the amount of $1,101,451.50; (2) BAP's projected lost sales of non-enjoined products in the amount of $611,316.06; (3) BAP's projected loss of goodwill in the marketplace and harm to its customer relationships in the amount of $1,642,634.45; and (4) other costs in the amount of $353,803.00, including legal fees, customer refunds, and costs to launch new products.

-1-

"The party against whom a preliminary injunction is sought has the burden of establishing the amount of a bond necessary to secure against the wrongful issuance of the injunction." <u>Elite Licensing, Inc. v. Thomas Plastics, Inc.</u>, 250 F. Supp. 2d 372, 391 (S.D.N.Y. 2003).

1.

The preliminary injunction enjoins defendants

> from selling any product that RGS sought to purchase at the expiration of the Licensing Agreement and that bears any of the following marks: the "Insta-Snow" word mark, "Insta-Snow" design mark, "Instant Amazing Snow" word mark, "Instant Amazing Snow" design mark, "Steve Spangler Science" word mark, "Steve Spangler Science" design mark, "Sick Science" word mark, "Sick Science" design mark, "Energy Stick" word mark, "Energy Stick" design mark, "Geyser Tube" word mark, and "Geyser Tube" design mark. Defendants are enjoined from selling any unit of any product that RGS sought to purchase and that bears any of the foregoing marks, regardless of whether RGS sought to purchase some or all units from BAP's remaining inventory of that product.
>
> Defendants are also enjoined from manufacturing, distributing, selling, or offering for sale Instant Amazing Snow products and "stocking stuffer" Insta-Snow products.

Thus, while the injunction is in effect, defendants will lose the profits from prospective sales of products that RGS sought to purchase and that bear the contested trademarks, as well as the profits from prospective sales of any Instant Amazing Snow products. If the Court of Appeals determines that the preliminary injunction was entered in error, defendants may be able to recover profits from lost sales of enjoined products in their possession while the injunction was in effect.

Defendants seek to include in the bond amount not only lost

profits but rather lost sales, which include production costs. Production costs are not included because the products already exist in BAP's inventory, and BAP will not incur further production costs as a result of the injunction.

Defendants provide a table that lists the enjoined products, the number of units of each product in BAP's inventory as of October 25, 2019, the wholesale price per unit, production costs, lost sales, and lost profits.

The table also lists products that defendants are not enjoined from selling because RGS did not seek to purchase them. Plaintiff agrees that the sales of those products are not barred by their purchase requests but that "Insofar as the products identified as Amazing Snow Blizzard in a Box (5955), Amazing Snow Sno-Balls (5965), and Amazing Snow Snowman Activity (9500) are INSTANT AMAZING SNOW products, they are indeed covered by the injunction," which by its terms include "Instant Amazing Snow products."

Because the sales of Instant Amazing Snow products are enjoined regardless of whether RGS offered to purchase any of them, the lost profits from their sales are factored into the bond amount. Sales of the other listed products that RGS did not seek to purchase are not enjoined, and not included in the bond amount.

By multiplying the wholesale price per unit by the number

of units in BAP's inventory, and subtracting production costs, BAP's lost profits from sales of the enjoined products and the three Amazing Snow products total $429,918.60.

2.

Defendants argue that they have also lost sales of non-enjoined products due to plaintiff's post-injunction actions of sending a letter "to BAP's customers advising them of the injunction" and starting "an aggressive campaign on Amazon.com to block BAP's customers from selling products." Because plaintiff's alleged post-injunction conduct, not the injunction itself, caused those losses, BAP's lost sales of non-enjoined products are not included in the bond amount. See Medafrica Line, S.P.A. v. Am. W. African Freight Conference, 654 F. Supp. 155, 156 (S.D.N.Y. 1987) (A "defendant who has been wrongfully enjoined is only entitled to recover damages shown to have been proximately caused by the injunction . . . .").

3.

Nor is the $1,642,634.45 projected damage to BAP's goodwill and customer relationships included in the bond amount. In calculating such damage, BAP compares its sales of non-enjoined products in November 2018, December 2018, and the first quarter of 2019 with its expected sales of non-enjoined products in November 2019, December 2019, and the first quarter of 2020, respectively. However, those comparisons give no solid basis

for their predictions of future sales, or whether the projected loss was caused by plaintiff's post-injunction conduct rather than the injunction. See Int'l Equity Investments, Inc. v. Opportunity Equity Partners Ltd., 441 F. Supp. 2d 552, 566 (S.D.N.Y. 2006) ("In fixing the amount of security required, a court is not required to order security in respect of claimed economic damages that are no more than speculative. Moreover, the burden is on the party seeking security to establish a rational basis for the amount of the proposed bond.").

4.

Defendants also seek to include other costs and damages in the bond amount.

First, BAP claims it "has incurred or will incur $101,403.00 in attorneys' fees and costs in connection with BAP's compliance with the injunction and BAP's appeal of the injunction to the Second Circuit." However, "it has long been established that a prevailing party may not generally collect as damages against an injunction bond attorneys' fees expended in litigating the injunction." Nokia Corp. v. InterDigital, Inc., 645 F.3d 553, 560 (2d Cir. 2011). BAP's legal fees are therefore not included in the bond amount. See Country Fare LLC v. Lucerne Farms, 11 Civ. 722 (VLB), 2011 WL 2222315, at *11 (D. Conn. June 7, 2011) ("However, attorney's fee are not recoverable as damages in an action on an injunction bond . . .

Based on the foregoing analysis, Lucerne should be entitled only to a disgorgement of whatever net profit Country Fare makes from selling Mainely Mulch throughout the duration of the preliminary injunction.") (citations omitted).

Second, BAP claims that plaintiff asked Amazon.com to block BAP's customers from selling BAP's products, and BAP "anticipates that these customers will seek refunds to for the blocked products" in the amount of $90,000. Those predicted costs, if incurred, are a result of plaintiff's post-injunction conduct, not the injunction, and are not included in the bond amount.

Third, BAP claims that it is "in the process of launching new products in place of the enjoined products," and "anticipates that it will cost at least $162,400.00" to do so. It may be argued that those costs would not be incurred but for the injunction, and they are included in the calculated bond amount of $592,318.60.

**CONCLUSION**

Rounding up to cover unforeseen recoverable losses, plaintiff shall post a bond in the amount of $600,000 on or before Friday, December 20, 2019.

Defendants' letter motions to file under seal confidential business information and commercial data in their submissions

regarding the bond amount (Dkt Nos. 105 and 106) are granted.

So ordered.

Dated:   New York, New York
         December 10, 2019

                                            *Louis L. Stanton*
                                         LOUIS L. STANTON
                                          U.S.D.J.