ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

REALLY GOOD STUFF, LLC,

          Plaintiff,

  - against -

BAP INVESTORS, L.C. and CREATIVE KIDS FAR EAST INC.,

          Defendants.

19 Civ. 2218 (LLS)

MEMORANDUM AND ORDER

Defendants seek to recover a total of $520,223.49 in damages against the $600,000 bond posted by plaintiff in accordance with the Court's December 10, 2019 order. That is composed of $101,944.83 in profits for lost sales of wrongfully enjoined products, $260,000.00 in profits for lost sales of non-enjoined products, and $158,278.66 in costs of complying with the injunction.

For the reasons stated below, if their figures survive discovery and cross-examination at trial, defendants may recover a total of $243,166.01.

## Applicable Principles

> Although we hold that a wrongfully enjoined party is entitled to a presumption in favor of recovery, that party is not automatically entitled to the damages sought. The presumption applies to "provable" damages. Global NAPs, 489 F.3d at 23; Nintendo, 16 F.3d at 1036. Thus, the wrongfully enjoined party must first demonstrate that the damages sought were proximately caused by the wrongful injunction. See Blumenthal, 910 F.2d at 1056 ("[Wrongfully enjoined parties] are entitled to damages as may be shown to have been proximately caused by the injunction, up to the amount of the bond." (citation omitted)); see also Nintendo, 16 F.3d at 1038 (requiring that party seeking recovery "establish[ ] with reasonable certainty that it was damaged by the issuance of the injunction" (emphasis

added)). The wrongfully enjoined party must also properly substantiate the damages sought. However, the party's proof of damages "d[oes] not need to be to a mathematical certainty." Global NAPs, 489 F.3d at 24.

Nokia Corp. v. InterDigital, Inc., 645 F.3d 553, 559 (2d Cir. 2011)(all brackets, emphases, parentheticals and edits as in Nokia).

1.

Defendants claim that when the injunction went into effect they had nine product lines in their inventory, which held 30,272 units that RGS did not seek to purchase but that defendants were enjoined from selling. See Oprins Decl. (Dkt. No. 148) ¶ 10. They claim a total of $101,944.83 in lost profits on the forbidden sales of those units. Id. ¶ 12.

Plaintiff argues that defendants cannot claim lost profits on the Released Units because defendants are now free to sell them. Nevertheless, the Court does not go beyond the first step and inquire into later events which might repair their losses through other means. See Hanover Shoe, Inc. v. United Shoe Mach. Corp., 392 U.S. 481, 490, n.8 (1968).

Because defendants were wrongfully enjoined from selling "units (beyond the numbers RGS sought to purchase) of any product lines from which RGS sought to purchase less than all of the inventory," Dkt. No. 121 at 3, defendants are entitled to recover $101,944.83 in profits for lost sales of the 30,272

enjoined units.

2.

Defendants also seek $260,000 in profits from lost sales of products which were not enjoined, but were free to be sold. They assert that "the order volume for BAP's products precipitously dropped as soon as the injunction took effect, including orders for products that were not enjoined." Defs. Br. at 11.

Defendants argue that because customers could not include the enjoined products in their orders for non-enjoined products, their orders were reduced below the minimum size required to obtain free freight shipping, so customers "often chose not to place an order that would have otherwise included the Wrongfully Enjoined Products." Oprins Decl. ¶ 33. Defendants also argue that the injunction "scared off" many customers who "expressed great confusion about where to purchase products (including non-enjoined products) that used the Marks-At-Issue" and "questioned BAP's ability to fill orders for such products in view of the injunction." Defs. Br. at 12.

But customer confusion about what products were enjoined would extend equally to the products whose sales were properly enjoined. The number of sales lost because of non-combination with wrongfully enjoined products is speculative. The source of the confusion was the injunction, whose terms were predominantly

affirmed and are still in effect.[1] See B.G. Soft Ltd. v. BG Soft Int'l, Inc., No. CV-01-17 (RR) (VVP), 2002 WL 1467744, at *2 (E.D.N.Y. Apr. 29, 2002) ("the damages award is limited to those damages arising from the operation of the injunction itself and not from damages occasioned by the suit independently of the injunction . . . Although damages need not be proved with mathematical certainty, they cannot be speculative.") (citation and internal quotation marks omitted)(quoting Medafrica Line, S.P.A. v. American West African Freight Conference, 654 F.Supp. 155, 156 (S.D.N.Y.1987)).

Accordingly, defendants cannot recover damages for diminished sales of non-enjoined products.

3.

Defendants also argue that they are entitled to recover $158,278.66 for costs they incurred to comply with the injunction.

First, they claim that they spent $141,221.18 to develop, manufacture, and market new products in place of the wrongfully enjoined products they could not sell, such as Snow Pets, Rainbow Snow, and Shocking Science. Specifically, BAP claims it spent $3,600 to develop the Snow Pets name and logo, $865.35 in

---

[1] Defendants are still enjoined from selling the number of units of products that RGS sought to purchase from BAP's remaining inventory, from manufacturing and selling Instant Amazing Snow products and "stocking stuffer" Insta-Snow products, and from using any of RGS' marks in advertising and promotional materials.

-4-

$87,546.75 to market and manufacture Snow Pets, $3,600 to develop the Rainbow Snow name and logo, $24,637.56 to market and manufacture Rainbow Snow, $4,800 to develop the Shocking Science product, and $16,171.52 to market and manufacture Shocking Science.  Oprins Decl. ¶¶ 49-55.

Defendants' costs to develop, market, and manufacture products to replace the wrongfully enjoined products were proximately caused by the vacated part of the injunction, and were included in the Court's December 10, 2019 order requiring RGS to post the bond.  Thus, defendants are entitled to recover $141,221.18 in costs to create the replacement products.

Second, defendants claim that they spent an additional $17,057.48 on outside counsel to ensure that they were "taking appropriate steps to comply with the injunction."  Defs. Br. at 10.  That work includes "legal research on compliance issues, determining scope of the injunction, ability to sell products in foreign jurisdictions, and reviewing products to confirm that they comply with the injunction."  Oprins Decl. ¶ 56.  Those fees and expenses are a result of the injunction as a whole, including the parts that are still in effect.  Defendants are not entitled to recover legal fees and expenses associated with compliance with the injunction, and they do not identify other costs of compliance proximately caused by their inability to sell the wrongfully enjoined products.

## CONCLUSION

All else being equal, defendants' motion to recover damages from the injunction bond (Dkt. No. 140) would be granted in part as such: defendants would be entitled to recover $101,944.83 in profits for lost sales of the enjoined units and $141,221.18 in costs to create replacement products, for a total amount of $243,166.01.

But all things are not equal. Plaintiff claims that some of the data proffered by defendants conflicts with what defendants have stated elsewhere, that none of it can be taken at face value, and that plaintiff has not yet had the benefit of discovery into defendants' proposed calculations. Pl. Opp'n Br. at 7, n. 5. These matters can be examined and resolved in the processes of discovery and trial.

In light of the forgoing, and as a matter of sound administration, the final determination of the defendants' recovery of injuries from the erroneous injunction against sales of certain products beyond the amounts plaintiff sought to purchase will be deferred until trial of the whole case.

So ordered.

Dated:   New York, New York
         November 6, 2020

                                   _Louis L. Stanton_
                                   LOUIS L. STANTON
                                   U.S.D.J.